## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MELISSA COLEMAN** | § | **Case No. 2:25-cv-00044** |
| **and DERMATOLOGY NOLA INC.** | § | |
| *Plaintiffs* | § | **Section "R"** |
| **v.** | § | |
| | § | |
| **MELINDA FARINA and** | § | **Judge Sarah S. Vance** |
| **BEAUTY BROKERS – MELINDA** | § | |
| **FARINA INCORPORATED,** | § | **Magistrate Judge Janis Van Meerveld** |
| *Defendants* | § | |
| | § | |

---

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' 12(B)(2) MOTION TO DISMISS

NOW COMES, the Plaintiffs, Melissa Coleman ("Mrs. Coleman") and Dermatology NOLA Inc. ("Derm NOLA"), through their undersigned counsel, who respectfully oppose the Motion to Dismiss for Lack of Personal Jurisdiction filed by Defendants, Melinda Farina ("Ms. Farina") and Beauty Brokers—Melinda Farina Incorporated ("Beauty Brokers"), pursuant to Federal Rule of Civil Procedure 12(b)(2) [Dkt. No. 10] ("Motion to Dismiss"). Plaintiffs incorporate all documents cited and contained in the Court's record and respectfully submit the following:

### I.       INTRODUCTION

This Court may exercise both general and specific jurisdiction over Defendants. General jurisdiction exists because Defendants have maintained continuous and systematic contacts with Louisiana through their business operations, online engagement, and direct interactions with Louisiana residents, including consultations and referrals. Additionally, specific jurisdiction is warranted because Defendants deliberately and repeatedly targeted

Louisiana, its residents, and, specifically, Plaintiffs, causing substantial harm within the state.

Defendants engaged in an intentional and consistent campaign of defamation against Mrs. Coleman and her business, Derm NOLA, making false and harmful statements designed to damage her personal and professional reputation in Louisiana. The Defendants' conduct was not random or incidental—it was calculated and purposeful. Through social media platforms and other forms of communication, Defendants directly engaged with members of the New Orleans community, solicited information about Mrs. Coleman from Louisiana residents, and repeatedly referred to her as the "wife of a NOLA Derm," ensuring their defamatory statements resonated within the very community in which she lives and works. Defendants even acknowledged their direct outreach to New Orleans residents, thanking them for providing information and amplifying their false accusations.

Given Defendants' intentional efforts to reach into Louisiana and inflict harm, they have unquestionably established sufficient minimum contacts with the state to warrant this Court's exercise of personal jurisdiction. To allow Defendants to escape jurisdiction after purposefully directing their harmful conduct at Plaintiffs in Louisiana would undermine fundamental principles of justice. Accordingly, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss.

## II.    RELEVANT FACTUAL BACKGROUND

On January 5, 2025, Plaintiffs filed a Complaint against Defendants, Ms. Farina and Beauty Brokers (Dkt. No. 1) (the "Complaint"). This case arises from Defendants' intentional and harmful campaign of defamation against Plaintiffs, through which they

have recklessly and continuously disseminated false and damaging statements designed to tarnish Plaintiffs' reputations. Using platforms like Instagram and Reddit, Defendants have knowingly propagated baseless and malicious lies about Mrs. Coleman, specifically targeting her, Derm NOLA and the residents of the New Orleans, Louisiana community. *See* Complaint at ¶¶ 19, 29. As such, Plaintiffs filed their Complaint seeking a trial by jury for defamation and intentional infliction of emotional distress. *Id*. at ¶ 51.

Defendants operate a website at https://www.thebeautybrokers.com and maintain an Instagram account under the handle @beautybrokerofficial and a Reddit account under the username: MelindaBB. *Id.* at ¶ 9. Through these platforms, Defendants establish and maintain a global presence within the health and beauty industry and engage in business activities targeting residents of the State of Louisiana. *Id.* Specifically, Defendants have conducted consultations with Louisiana residents located in Louisiana and more specifically the Greater New Orleans area and have referred patients to medical professionals practicing within the State. *Id.* Defendants do not dispute this other than to say such consultations were conducted via Zoom. *See* Motion to Dismiss, pp. 1-2, 7, and 9.

Moreover, at the time Defendants made the defamatory statements, they were fully aware that Plaintiffs were domiciled in Louisiana. Defendants intentionally directed their tortious conduct—including the publication of the defamatory statements—at Plaintiffs within this judicial district, causing them harm and resulting in damages. *See* Complaint at ¶ 10. These actions demonstrate that Defendants have sufficient minimum contacts with the State of Louisiana to satisfy the Due Process Clause of the United States Constitution.

3

*Id.* By engaging in activities directly connected to this lawsuit, Defendants have established substantial ties to Louisiana. *Id.* They have purposefully availed themselves of the privileges and benefits of conducting business within the state, and therefore, they should reasonably anticipate being subject to legal proceedings in Louisiana. *Id.*

For over a year, beginning in December 2023 and continuing through the present date, Defendants, operating through the Beauty Broker's Instagram and Reddit accounts, have engaged in a consistent and malicious pattern of publishing false and defamatory statements about Mrs. Coleman (operating as "Mrs. Derm"). *Id.* at ¶ 17. Defendants' malicious attacks began on Reddit, where they falsely accused Mrs. Coleman of creating a Reddit account, posting up to 600 fictitious comments, and deliberately trolling them. *Id.*

Despite Mrs. Coleman consistently asserting that she neither owns nor operates the Reddit account in question, nor is she responsible for the statements or opinions posted from it, Defendants persisted in spreading defamatory content about her on both Instagram and Reddit. In fact, Defendants explicitly named and identified Mrs. Coleman in their Reddit posts, where they first linked her to being the wife of a dermatologist in New Orleans. Complaint ¶ 19. One Reddit post specifically provides "Okay Melissa Coleman … wife of a NOLA Derm….a woman who has blatantly slandered me to ***my previous clients in their area***…" *Id.* (emphasis added). This statement demonstrates that Defendants knowingly directed their actions toward Louisiana residents, engaging with individuals in the New Orleans community to spread defamatory statements about Mrs. Coleman.

Defendants repeatedly wrote about Mrs. Coleman in their posts, identifying her as "wife of a NOLA Derm" and "the wife of New Orleans Dermatologist 'Coleman Dermatology.'" *Id.* Despite receiving a cease-and-desist letter on March 12, 2024, which demanded that Defendants remove the defamatory content, issue a public retraction, and apologize for the harm caused by Defendants' false statements on Instagram and Reddit, Defendants disregarded the demand and continued publishing defamatory statements about Mrs. Coleman on the Beauty Brokers' Instagram account and other social media platforms. *Id.* at ¶ 20-21. However, rather than ceasing their conduct, Defendants merely altered their references to Mrs. Coleman, replacing her name with phrases such as "wife of derm in NOLA," "NOLA derm wife," and "New Orleans wife of dermatologist." *Id.* at ¶ 22. Even though the online platforms do not specifically refer to her as Mrs. Coleman, it is obvious that Defendants are referring to her. *Id.*

In the last two weeks of December, these defamatory statements further escalated, as Defendants continued accusing Mrs. Coleman of heinous acts that are untrue and harmful. These outrageous statements are also threatening in nature and constitute harassment. These personal attacks against Mrs. Coleman have caused her extreme distress and must be stopped. *Id.* at ¶ 24. Defendants' online posts about Mrs. Coleman have included defamatory accusations, statements and disparaging remarks designed to damage Mrs. Coleman's personal and professional reputation. *Id.* at ¶ 25. Specifically, Defendants' posts contain false and harmful defamatory statements about Mrs. Coleman, such as "textbook single white female;" "stalker;" "awful creature;" "psycho stalker;" "sick stalker;" "sick individual;" etc. *Id.* at ¶ 29.

5

Further, Defendants' defamatory posts were deliberately directed at the State of Louisiana, as they actively sought the attention of New Orleans residents to "warn" them about Mrs. Coleman. Defendants also reached out to New Orleans residents for more information on Mrs. Coleman, as evidenced by their post stating, "[a]ccording to several other women in her town she has done this same exact thing to them," *Id.* at ¶ 29, p. 14 and 16, as well as Defendants' post thanking the ladies of the New Orleans community for "sharing the eye-opening truth about [Mrs. Coleman]." *Id.* at ¶ 29, p. 13.

These statements confirm that Defendants were fully aware that Mrs. Coleman resided and conducted business in Louisiana. They also demonstrate that Defendants intentionally directed their messages toward Louisiana with the goal of damaging Plaintiffs' reputation within the state. *Id.* at ¶ 29. As a result, Plaintiffs suffered the brunt of the harm and reputational damage in Louisiana, where Defendants intentionally targeted them. *Id.* at ¶ 31-32. Defendants' false and defamatory statements were made with the intent to damage Mrs. Coleman's personal reputation within the health and wellness Instagram community, as well as her standing in the local New Orleans community. *Id.* at ¶ 35. These calculated attacks were aimed at undermining her credibility, damaging her professional image, and harming her business. *Id.*

As a direct result of Defendants' defamatory statements, Mrs. Coleman and Derm Nola have suffered damages. *Id.* at ¶ 36. Specifically, Mrs. Coleman's personal reputation has been severely damaged, along with the reputation and business of Derm NOLA. *Id.* Defendants intentionally directed their defamatory statements toward the Louisiana community, and as a consequence, these statements have permeated the Greater

New Orleans area, causing substantial reputational and economic harm. This includes, but is not limited to, loss of income, loss of business opportunities, severe reputational damage, and significant emotional distress. *Id.*

On January 9, 2025, Defendants were served with the Complaint. Subsequently, on January 23, 2025, Defendants filed their Motion to Dismiss arguing that this Court has neither specific nor general jurisdiction over it. *See* Motion to Dismiss, pp. 3-9. In support of their position, Defendants assert that they do not have any meaningful contacts with Louisiana; they did not purposefully avail themselves to Louisiana; and the assertion of personal jurisdiction over Defendants would offend tradition notions of fair play and substantial justice. Defendants' arguments are baseless and the Motion to Dismiss should be denied.

### III.    LAW AND ARGUMENT

In order to survive a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, "[a] [p]laintiff need only plead a *prima facie* case for personal jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citing *Felch v. Transportes Lar-Mex S.A. De CV*, 92 F.3d 320, 326 (5th Cir. 1996)); *Brown v. Slenker*, 220 F.3d 411, 417 (5th Cir. 2000) ("To defeat dismissal, the [plaintiff] was required only to present facts sufficient to constitute a *prima facie* case of personal jurisdiction." (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)); *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006) ("The plaintiff need not… establish jurisdiction by a preponderance of the evidence; a *prima facie* showing suffices." (citing *Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982)).

"In determining whether the plaintiff has made a *prima facie* showing of personal jurisdiction, the district court must take the allegations of the complaint as true, except as controverted by opposing affidavits, and all conflicts in the facts must be resolved in favor of the plaintiff." *Stone v. LG Chem Am.*, No. 20-1211 SECTION: "E", 2020 U.S. Dist. LEXIS 103790, at *2 (E.D. La. June 15, 2020) (Morgan, S.); *See also Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985). When facts are disputed, the plaintiff presenting a *prima facie* case is entitled to have the conflicts resolved in his favor. *See Bullion*, 895 F.2d at 216-17; *Felch v. Transportes Lar-Mex SA De CV*, 92 F.3d 320, 327 (5th Cir. 1996). In other words, when a defendant's motion to dismiss merely seeks to create a factual dispute before any discovery has taken place, it is appropriate to deny the motion. *See Joffee v. Lehman Bros., Inc.*, No. 04 Civ. 3507, 2005 WL 1492101, at *6 (S.D.N.Y. June 23, 2005) (holding that factual disputes are inappropriate for disposition on a motion to dismiss).

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant and (2) the exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution. *Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (citations omitted).

Here, the Louisiana long-arm statute extends personal jurisdiction to the maximum limits permitted by due process. La. R.S. 13:3201(B); *Pedelahore v. Astropark, Inc.,* 745 F.2d 346, 348 (5th Cir. 1984), reh'g denied, en banc, 751 F.2d 1258 (5th Cir. 1984). Due process permits the exercise of personal jurisdiction over a nonresident defendant when

that defendant has "minimum contacts" with the forum state and the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Johnston v. Multidata Sys. Int'l Corp.,* 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)).

Minimum contacts can be established through either specific or general jurisdiction. *Alpine View Co. v. Atlas Copco AB,* 205 F.3d 208, 215 (5th Cir. 2000) (citation omitted). As more fully discussed below, there is no doubt that personal jurisdiction exists over the Defendants.

### A. The Defendants Activities Within the State of Louisiana are Continuous and Systematic

General jurisdiction exists over a non-resident defendant when its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown,* 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (citation omitted). In determining whether a defendant's contacts rise to this level, courts frequently consider the extent and nature of the defendant's commercial activity within the state, including whether they actively solicit business, maintain a continuous online presence accessible to residents, or generate revenue from the forum state. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (exploring the constitutional scope of jurisdiction over internet-based businesses and assessing the "nature and quality of commercial activity conducted over the Internet").

Here, Defendants maintain continuous and systematic contacts with Louisiana through their website, where their services are actively marketed, offered, and performed. The website facilitates a "Streamlined Booking Process" that provides clear instructions for users—including Louisiana residents—to book services directly. The process requires users to contact Defendants via email, reinforcing an intentional and sustained effort to engage with clients across multiple jurisdictions, including Louisiana.

Defendants further ensure uninterrupted communication by instructing potential clients to add Defendants' email to their contacts list. *See* Defendants' website at https://www.thebeautybrokers.com/our-services. Moreover, Defendants have directly engaged with Louisiana residents beyond just their website. Notably, Defendants have admitted to conducting Zoom meetings with clients in Louisiana, *See* Motion to Dismiss pp. 1-2, 7, 9, and 13, and have acknowledged having former clients in Louisiana. *See* Complaint ¶ 19. These admissions confirm Defendants' purposeful and ongoing business activities within the state. By providing virtual consultations to Louisiana residents and maintaining a client base that includes individuals in Louisiana, Defendants have established a pattern of commercial interactions that further support a finding of general jurisdiction.

Given the level of engagement Defendants maintain with Louisiana residents—through direct online interactions, Zoom consultations, former client relationships, ongoing solicitation of business, and the performance of services—Defendants' activities within the state reflect a degree of continuous and systematic contact that supports a finding of general jurisdiction. While specific jurisdiction remains the strongest basis for this Court's exercise

of personal jurisdiction, Defendants sustained and targeted business activities in Louisiana further reinforce their substantial connection to the state.

### B. <u>The Defendants are Subject to Specific Personal Jurisdiction in this District</u>

Specific jurisdiction applies when a non-resident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.,* 921 F.3d 522, 539 (5th Cir. 2019) (quoting *Panda Brandywine*, 253 F.3d at 868). "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc*., 9 F.3d 415, 419 (5th Cir. 1993).

Plaintiffs have made a *prima facie* case for this Court's exercise of specific personal jurisdiction over Defendants. The Fifth Circuit has detailed a three-factor analysis to guide courts in assessing the presence of specific personal jurisdiction:

> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable. *Stone v. LG Chem Am.*, No. 20-1211 SECTION: "E", 2020 U.S. Dist. LEXIS 103790, at *4; *See also Nuovo Pignone, SpA v. STORMAN ASIA M/V,* 310 F.3d 374, 378 (5th Cir. 2002); *Luv N' Care*, 438 F.3d at 469.

To make a *prima facie* showing of specific personal jurisdiction, a plaintiff need only satisfy the first two factors. *Id.*

### 1.  Defendants' Minimum Contacts with the State of Louisiana

Plaintiffs have clearly demonstrated that Defendants have sufficient minimum contacts with Louisiana to warrant this Court's exercise of specific jurisdiction. Defendants actively engage in business activities targeting Louisiana residents, as Plaintiffs have previously asserted that "the Defendants… engage in business activities targeting residents of the State of Louisiana" and "…have conducted consultations with Louisiana residents located in the Greater New Orleans area and have referred patients to medical professionals practicing within the State." *See* Complaint at ¶ 9.

Critically, Defendants do not dispute these facts. Instead, they have affirmatively acknowledged their interactions with Louisiana residents, including providing consultations and referrals within the state. *See* Motion to Dismiss, p. 1, 6, and 9; *See also* Complaint at ¶ 9. These admissions confirm that Defendants have purposefully availed themselves of the privilege of conducting business in Louisiana, thereby subjecting themselves to jurisdiction in this forum. Their deliberate engagement with Louisiana residents—both through direct consultations and by facilitating medical referrals within the state—demonstrates that they have knowingly and intentionally directed their business activities toward Louisiana, establishing the requisite minimum contacts necessary to support personal jurisdiction.

Moreover, Defendants have deliberately and repeatedly targeted the Louisiana community, making explicit references to Louisiana and its residents in the defamatory statements and social media posts at issue in this case. In one Reddit post, Defendants reference "my previous clients in ***their area***," *See* Complaint at ¶ 19, p. 6 (emphasis added),

unmistakably referring to Louisiana. Defendants further acknowledge their direct engagement with New Orleans residents, stating, "***so many NOLA women sharing the sweetest messages with me*** and eye-opening truth about this Lady Smearing my name…" *Id.* at ¶ 29, p. 13 (emphasis added).

Defendants' targeting of Louisiana is even more explicit when they state, "this NOLA derm wife has done this to several women in her town. She goes after female entrepreneurs, tries to copy their businesses, and then runs an insane smear campaign on them. ***I've spoken to all of them***…" *Id.* at ¶ 29, p. 16 (emphasis added). These statements are not incidental or coincidental; rather, they demonstrate Defendants' calculated efforts to engage with Louisiana residents, spread false and defamatory claims within the state, and inflict reputational harm on Plaintiffs in their home forum. Given the intentional nature of these statements and their direct connection to Louisiana, there is no question that Defendants have purposefully directed their conduct at this jurisdiction, reinforcing the propriety of this Court's exercise of personal jurisdiction over them.

Defendants' efforts to engage the Louisiana community—particularly in New Orleans—are neither isolated nor incidental. Rather, Defendants have intentionally and systematically used their social media platforms, including Instagram and Reddit, to disseminate defamatory statements specifically targeting New Orleans residents. *See* Complaint at ¶ 19, pp. 6-8 and ¶ 29, pp. 11-18. These posts were not passive remarks; they were calculated efforts to actively engage, influence, and mobilize the local community against Mrs. Coleman. *Id.* Defendants did not simply make generalized statements; they explicitly sought to involve New Orleans residents in their campaign by "warning" them

about Mrs. Coleman and soliciting information from them. In one post, Defendants state, *"*according to several other women in her town, she has done this same exact thing to them," while in another, they express gratitude to New Orleans residents for "sharing the eye-opening truth about [Mrs. Coleman]." *See* Complaint at ¶ 29, pp. 13-16. These statements confirm that Defendants were deliberately reaching into Louisiana, engaging with local residents, and encouraging the spread of their defamatory statements within the state. Such conduct leaves no doubt that Defendants purposefully directed their actions at Louisiana, with the intent of reaching, influencing, and harming Louisiana residents—precisely the type of activity that satisfies the requirements for specific jurisdiction.

Defendants have provided no evidence or affidavits to dispute Plaintiffs' allegations. Instead, they rely on the meritless argument that it is "mere fortuity" that Plaintiffs reside in Louisiana. *See* Motion to Dismiss at p. 6. This mischaracterizes the facts. While Defendants' posts were not physically made in Louisiana, they were deliberately targeted at Louisiana residents, as evidenced by their repeated references to "NOLA" and "New Orleans." Such conduct is neither incidental nor coincidental—it is a calculated effort to engage, influence, and harm individuals in Louisiana, particularly in New Orleans.

Given this clear and purposeful targeting of Louisiana, Defendants' contacts with the state easily satisfy the requirements for personal jurisdiction. Their actions were deliberate, sustained, and specifically directed at Louisiana residents, leaving no doubt that this Court has jurisdiction over them.

2.  **Plaintiffs' Cause of Action Arises Out of or Results from the Defendants' Forum-Related Contacts**

The touchstone for the exercise of personal jurisdiction over nonresident defendants in defamation cases is *Calder v. Jones*, where the Supreme Court held that a defendant can be subject to jurisdiction in a state where they intentionally target a resident and cause harm in that forum. *Calder v. Jones*, 465 U.S. 783, 789, 104 S. Ct. 1482 (1984). The Fifth Circuit has embraced the *Calder* "effects" test, finding that "even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Planet Beach Franchising Corp. v. C3Ubit, Inc.,* 2002 U.S. Dist. LEXIS 18349, 2002 WL 1870007, at *8 (E.D. La. Aug. 12, 2002) (citing *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)); *See also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999).

In *Calder v. Jones*, a reporter from Florida published an allegedly defamatory article in the National Enquirer, which is a publication based in Florida with a national distribution. *Calder*, 465 U.S. at 783. The article was about an entertainer living in California and concerned the California activities of a California resident. *Id.* Importantly, the Supreme Court noted that the article drew from California sources and that the reporter and publishers of the article knew that the brunt of the harm, in terms of both respondent's emotional distress and the injury to her professional reputation, would be felt in California. *Id.* at 789. Ultimately, the Supreme Court found that "an individual injured in California

need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.* at 790.

The facts of this case closely mirror those in *Calder*. Defendants published several controversial and defamatory posts on social media about Mrs. Coleman and NOLA Derm, which they knew to be domiciled and based in Louisiana. The primary target of these defamatory posts was the Plaintiffs and the Louisiana community. Additionally, Defendants referenced Louisiana sources when discussing Plaintiffs. *See* Complaint at ¶ 29, pp. 13-17. The effects of Defendants' publication were either intentionally directed at Louisiana or were highly likely to be felt there. *Guidry*, 188 F.3d at 628.

Further, similar to the petitioners' actions in *Calder*, Defendants made several deliberate attempts to reach into the forum state. Specifically, Defendants published nine defamatory posts about Plaintiffs and openly called on and reached out to the citizens of New Orleans, Louisiana, to assist in harming Mrs. Coleman through their damaging remarks. *See* Complaint at ¶ 29, pp. 13–17. As outlined in the Complaint, Defendants actively engaged with and reached out to citizens of Louisiana, demonstrating a clear connection to the state.

For example, one of the Instagram posts expressly provides that Mrs. Coleman engages in activities "[a]ll from [Plaintiff's] LITTLE life in New Orleans... [a]ccording to several other women in ***her town*** [Plaintiff] has done this same exact thing to them… This is soon to come to surface so you'll be learning more about this individual very soon!" *Id.* at ¶ 29, p. 14 (emphasis added). Defendants have cited their sources—other women in New Orleans—and, with full knowledge, caused harm in New Orleans by persistently posting

16

false and defamatory stories about Mrs. Coleman. *Id.* Even further, Defendants go so far as to state that "…this person [Mrs. Coleman] has a track record of doing this to female business owners. ***We have tons of character references that we have collected this year***." *Id.* at ¶ 29, p. 17 (emphasis added). These statements are direct evidence that Defendants sought out Louisiana residents, gathered information from them, and then broadcasted false, damaging claims specifically intended to injure Plaintiffs in Louisiana. This conduct is precisely what *Calder* and its progeny recognize as sufficient forum-related contacts to establish specific jurisdiction.

Moreover, Defendants' conduct mirrors that in *Planet Beach Franchising Corp.*, where this Court exercised jurisdiction over out-of-state defendants who published defamatory statements about a Louisiana-based entity. *Planet Beach Franchising Corp.*, 2002 U.S. Dist. LEXIS 18349, 2002 WL 1870007, at *16-17.

In *Planet Beach Franchising Corp. v. C3Ubit, Inc.*, this Court found that specific jurisdiction over the defendants existed "because they committed an act outside of the forum that allegedly caused a tortious injury within the forum, and the harm suffered was intended or highly likely to follow from defendants' acts." *Id.* This Court further noted that this, coupled with the fact that defendants drew from sources in the forum, placed phone calls to the forum, and obtained an electric copy of plaintiffs' registered trademark from a server located in the forum were enough to establish defendants' minimum contacts. *Id.*

The defendants in *Planet Beach Franchising Corp.* published an allegedly defamatory article about a corporation that defendants knew to be based in Louisiana. *Id.* at 9. Specifically, the defendants' article was focused on and purposefully targeted at the

plaintiffs. *Id.* at 16. This Court also rejected the argument that jurisdiction requires direct economic gain from the forum, holding that "the *Calder* test does not turn on profitability of defendants' activities in the forum." *Id.* at 11. To the contrary, this Court found that the "defendants lack of direct economic benefit from Louisiana does not foreclose the exercise of personal jurisdiction." *Id.* at 12.

Just like in *Planet Beach Franchising Corp.*, Defendants' defamatory posts on Reddit and Instagram were published outside Louisiana. However, as discussed in detail herein, Defendants knew that Plaintiffs were not only based in Louisiana, but specifically in New Orleans, when they made these malicious posts. More importantly, their defamatory content was intentionally directed at Plaintiffs and the Louisiana community, particularly New Orleans. Despite Defendants' attempt to downplay their actions by arguing that "[t]hose comments and posts were not made specifically to the forum state," *See* Motion to Dismiss at p. 6, their own words prove otherwise. Defendants actively sought the attention of the New Orleans community and even explicitly acknowledged it, posting, 'AWWW THANKS LADIES SO MANY NOLA WOMEN SHARING THE SWEETEST MESSAGES W[ITH] ME AND EYE OPENING TRUTH ABOUT THIS LADY SMEARING MY NAME…' *See* Complaint at ¶ 29, p. 13. Defendants' posts were calculated to provoke engagement from Louisiana residents, encouraging them to participate in spreading the defamatory narrative. Their conduct was not random or incidental—it was a deliberate effort to harm Plaintiffs' reputation within the very community where they live and work.

The Supreme Court in *Calder* made clear that a person injured in their home state should not be required to travel elsewhere to seek redress against those who knowingly cause them harm in that state. *Calder*, 465 U.S. at 790. The same principle applies here. Plaintiffs' injury occurred in Louisiana, where they live and work, and where Defendants directed their defamatory attacks. Under *Calder* and Fifth Circuit precedent, Defendants' purposeful targeting of Louisiana and the foreseeable harm caused within this forum make personal jurisdiction proper. Accordingly, Defendants' Motion to Dismiss should be denied.

3.  **Defendants, Aware that Plaintiffs are Louisiana Residents and Targeting Louisiana with Defamatory Statements, Could Reasonably Anticipate Being Haled into a Louisiana Court**

Louisiana, and more specifically, New Orleans, was the epicenter of Defendants' defamatory statements and social media posts. Defendants knew that the brunt of the harm caused to Plaintiffs would be felt in Louisiana. As the Fifth Circuit recognized, "[k]nowledge of the particular forum in which a potential plaintiff will bear the brunt of the harm forms an essential part of the *Calder* test." *Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002). Accordingly, "[t]he defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to **<u>reasonably anticipate</u>** being haled into court in that forum, as *Calder* itself and numerous cases from other circuits applying *Calder* confirm." *Id.* (emphasis added).

Defendants attempt to rely on *Revell*, but their reliance is misplaced, as this case is easily distinguishable from *Revell* on multiple grounds. In *Revell*, the defendant's article:

*   Did not reference Texas, the plaintiff's home state;

- Did not discuss any Texas-based activities of the plaintiff;

- Was not directed at Texas readers; and

- Was written without knowledge that the plaintiff even resided in Texas. *Id.* at 469, 473.

Given these facts, the court found that the defendant could not reasonably anticipate being sued in Texas because he had no knowledge or intent to direct his statements there. *Id.* at 465.

By contrast, Defendants here knew precisely where Plaintiff resided and intentionally directed their defamatory statements toward Louisiana. Defendants expressly identified Mrs. Coleman as "WIFE OF NOLA DERM," "NOLA derm wife," and "New Orleans wife of dermatologist" leaving no doubt that they were targeting a Louisiana resident. *See* Complaint at ¶ 22 and ¶ 28-29. Further, Defendants' posts were widely recognized by other Louisiana residents, many of whom reached out to Mrs. Coleman to ensure she was aware of the defamatory statements. *See e.g., Id.* at ¶ 27 and ¶ 33.

Simply put, the geographic focus of Defendants' social media campaign was New Orleans, Louisiana. Unlike in *Revell*, where the forum state was merely incidental, Louisiana was the intended audience and target of Defendants' posts. Given this direct and intentional targeting, Defendants could reasonably anticipate, (1) being haled into a Louisiana court to answer for their defamatory statements and social media campaign; and (2) that the overwhelming harm caused to Plaintiffs—including reputational damage, professional harm, and emotional distress—would be felt in Louisiana, where Plaintiffs live and conduct business. Defendants' actions were not random, incidental, or

20

unforeseeable—they were deliberate, calculated, and purposefully directed at Plaintiffs and their Louisiana community. As such, this Court's exercise of personal jurisdiction over Defendants is entirely proper.

**C.** **This Court's Exercise of Specific Personal Jurisdiction over the Defendants Does Not Offend Traditional Notions of Fair Play and Substantial Justice**

This Court's exercise of specific personal jurisdiction over Defendants is not only reasonable but necessary, and Defendants have failed to demonstrate that litigating in Louisiana would impose an unfair burden on them. "[O]nce a plaintiff has established minimum contacts, the burden shifts to the defendant to make a 'compelling case' that the exercise of jurisdiction is not reasonable." *See Wien Air Alaska*, 195 F.3d at 215; *See also Guidry*, 188 F.3d at 619. To satisfy this burden, Defendants must show that the assertion of jurisdiction offends traditional notions of fair play and substantial justice. *Guidry*, 188 F.3d at 630.

Courts weigh five factors in this analysis: (1) The burden on the defendant of litigating in the forum state; (2) The forum state's interest in the lawsuit; (3) The plaintiff's interest in obtaining convenient and effective relief; (4) The judicial system's interest in efficient resolution of controversies; and (5) The shared interest of states in furthering fundamental social policies. *Wien Air Alaska*, 195 F.3d at 215; *See also Ruston Gas Turbines, Inc.*, 9 F.3d at 421. Importantly, "the interests of the forum and the plaintiff justify even large burdens on the defendant." *See Wien Air Alaska*, 195 F.3d at 215; *See also Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)).

In *Wien Air Alaska*, the Fifth Circuit found no overwhelming burden to the defendant that outweighed the legitimate interests of the plaintiff and the forum state, reasoning that the defendant, at most, demonstrated an inconvenience which would be equally felt by forcing the plaintiff to litigate in Germany." *Wien Air Alaska*, 195 F.3d at 216. Here, Defendants have not met their burden of proving that jurisdiction in Louisiana is unreasonable. Like the defendant in *Wien Air Alaska*, Defendants claim that litigating in Louisiana is inconvenient, but they fail to show that it is any more burdensome for them than it would be for Plaintiffs to litigate in New Jersey. At best, Defendants' argument reflects a neutral inconvenience, which does not warrant dismissal. Moreover, Defendants deliberately targeted Louisiana residents with their defamatory statements, and their social media posts were aimed directly at Plaintiffs and their professional community in New Orleans. *See* Complaint at ¶ 29. Having purposefully directed their harmful conduct toward Louisiana, Defendants cannot now claim that it would be unfair to answer for those actions in this Court.

Defendants further argue that Plaintiffs filed suit in Louisiana because it is a "more favorable jurisdiction." *See* Motion to Dismiss at pp. 11-12. However, this claim is both speculative and irrelevant to the jurisdictional analysis. If anything, the same argument applies to Defendants' attempt to shift the litigation to New Jersey. The key distinction—which Defendants ignore—is that the harm they caused was felt in Louisiana, not New Jersey. Unlike New Jersey, Louisiana has a strong and legitimate interest in protecting its residents and businesses from defamatory attacks that cause reputational and economic

harm within the state. The brunt of the injury occurred in Louisiana, making it the appropriate forum for redress.

Additionally, Louisiana is the most efficient and effective forum for resolution of this dispute. The majority of key witnesses—those who saw, engaged with, or were influenced by Defendants' defamatory posts—are in Louisiana. *See* Complaint at ¶ 29, pp. 13-14 and pp. 16-17. Holding this case in another jurisdiction would create significant logistical issues in securing witness testimony and evidence, further underscoring Louisiana's role as the proper venue.

As for Defendants' assertion that "if this Court were to hear this matter, it would interfere with the interests of a court located in New Jersey, as New Jersey residents would be harmed", *See* Motion to Dismiss at p. 12, Defendants offer no factual or legal basis for this claim. They fail to identify any actual harm to New Jersey residents or explain how adjudicating this case in Louisiana would interfere with New Jersey's interests. In contrast, forcing Plaintiffs—who live, work, and suffered harm in Louisiana—to litigate in New Jersey would be both unfair and unreasonable.

The Supreme Court in *Calder v. Jones* made clear that a plaintiff should not be required to travel to another state to seek redress against a defendant who knowingly caused harm in the plaintiff's home state. *Calder*, 465 U.S. at 790. Here, Defendants intentionally caused injury in Louisiana and should reasonably expect to defend themselves in Louisiana. Their attempts to avoid jurisdiction lack merit, and this Court's exercise of jurisdiction is fully consistent with fair play and substantial justice. Accordingly, Defendants' Motion to Dismiss should be denied.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss must be denied. First, general jurisdiction over Defendants is proper, as they have maintained continuous and systematic contacts with Louisiana through their business operations, online engagement, and direct interactions with Louisiana residents, including consultations and referrals.  Second, Plaintiffs have established a *prima facie* case for this Court's exercise of specific personal jurisdiction over Defendants.  Louisiana—specifically, New Orleans—was the epicenter of Defendants' defamatory statements and social media campaign, and Defendants knowingly directed their harmful conduct at Plaintiffs in this forum. The resulting harm was not incidental but was foreseeable, intentional, and directly felt in Louisiana, where Plaintiffs live and conduct business. Further, Defendants have failed to meet their burden of showing that litigating in Louisiana presents an undue or unreasonable burden. Their inconvenience argument is unsubstantiated and does not outweigh Louisiana's significant interest in adjudicating this matter, nor Plaintiffs' right to seek relief in the forum where the harm occurred. Accordingly, Plaintiffs, Melissa Coleman and Dermatology NOLA Inc., respectfully request that this Honorable Court deny Defendants' Rule 12(b)(2) Motion to Dismiss in its entirety.

[*Signature Page Follows*]

Respectfully submitted,

**KREBS FARLEY, PLLC**

*/s/ Laura F. Ashley*
LAURA F. ASHLEY (L.B.N. 32820)
GABRIELLE L. FERRARA (L.B.N. 40767)
400 Poydras St. Ste 2500
New Orleans, LA 70130
Telephone: (504) 299-3570
Facsimile: (504) 299-3582
lashley@krebsfarley.com
gferrara@krebsfarley.com
***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on 11th day of February 2025, I served a copy of the foregoing by filing and uploading to the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Laura F. Ashley*
Laura F. Ashley