UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MELISSA COLEMAN, ET AL.                          CIVIL ACTION

VERSUS                                                     NO. 25-44

MELINDA FARINA, ET AL.                           SECTION "R" (1)

## ORDER AND REASONS

Before the Court is defendants Melinda Farina and Beauty Brokers—Melinda Farina Inc.'s ("Beauty Brokers") motion to dismiss based on lack of personal jurisdiction.[1] For the following reasons, the Court denies defendants' motion.

## I.  BACKGROUND

This case arises out of alleged defamatory posts on social media that defendant Melinda Farina made on her personal and on Beauty Brokers's social media accounts.[2] Plaintiffs Melissa Coleman and Dermatology NOLA, Inc. ("Dermatology NOLA") sued Farina and Beauty Brokers in this Court in January 2025 for defamation *per se* and intentional infliction of emotional distress.[3] Colman is an employee of Dermatology NOLA, which

---

[1]  R. Doc. 10.
[2]  R. Doc. 1; *see id.* at 6–8, 11–18.
[3]  *Id.* at 22–24.

1

is owned by her husband.⁴ Farina is the founder and owner of Beauty Brokers.⁵ Defendants move to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).⁶ Defendants argue that they do not have minimum contacts with Louisiana and that exerting jurisdiction over defendants would offend traditional notions of fair play and substantial justice.⁷ Plaintiffs oppose the motion.⁸

The Court considers the motion below.

## II.   LEGAL STANDARD

Personal jurisdiction "is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) (internal citation omitted). When a nonresident defendant moves the court to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden to show that personal jurisdiction exists. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). When the court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case, the nonmoving party need only

---

4   *Id.* at 4.
5   *Id.* at 3
6   R. Doc. 10.
7   *Id.* at 3–12.
8   R. Doc. 13.

make a *prima facie* showing. *Godhra v. United States Tobacco Co., Inc.*, 188 F.3d 619, 625 (5th Cir. 1999). The allegations of the complaint, except as controverted by opposing affidavits, must be taken as true, and all conflicts in the facts must be resolved in favor of plaintiffs. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

A court has personal jurisdiction over a nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over that defendant, and (2) the forum state's exercise of jurisdiction complies with the Due Process Clause of the Fourteenth Amendment. *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999). Because Louisiana's long-arm statute, La. R.S. § 13:3201, *et seq.*, extends jurisdiction to the full limits of due process, the Court's focus is solely on whether the exercise of its jurisdiction in this case satisfies federal due process requirements. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999) (citing La. R.S. § 13:3201(B)).

The exercise of personal jurisdiction over a nonresident defendant satisfies due process when (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with that state, and (2) exercising personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial

3

justice." *Latshaw*, 167 F.3d at 211 (citing *Int'l Shoe Co. v. Wa.*, 326 U.S. 310, 316 (1945)).

There are two ways to establish minimum contacts: general jurisdiction and specific jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). General jurisdiction will attach, even if the act or transaction sued upon is unrelated to the defendant's contacts with the forum state, if the defendant has engaged in "continuous and systematic" activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984); *Wilson*, 20 F.3d at 647. Contacts between a defendant and the forum state must be "extensive" to satisfy the "continuous and systematic" test. *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001); *see Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2853–54 (2011) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation it is an equivalent place, one in which the corporation is fairly regarded as at home.").

Specific jurisdiction exists when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867

4

(5th Cir. 2001); *Helicopteros*, 466 U.S. at 414 n.8.  Minimum contacts may be established by actions, or even just a single act, by the nonresident defendant that "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

"When the cause of action relates to the defendant's contact with the forum, the 'minimum contacts' requirement is satisfied, and 'specific' jurisdiction is proper, so long as that contact resulted from the defendant's purposeful conduct and not the unilateral activity of the plaintiff." *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987); *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").  This restriction on the minimum contacts inquiry ensures that the defendant "purposefully availed" itself of the benefits of the forum state such that it could "reasonably anticipate being haled into court there." *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) (quoting *Burger King*, 471 U.S. at 474); *see also Bearry*, 818 F.2d at 375.

5

## III. DISCUSSION

### A. General Jurisdiction

Plaintiffs argue that the nature of defendants' activities subject them to general personal jurisdiction in Louisiana. Plaintiffs must show "continuous and systematic" contacts such that defendants are "essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919. An individual is home in their domicile, and a corporation is home in their place of incorporation or principal place of business. The Fifth Circuit has stated that it is "incredibly difficult to establish general jurisdiction [for a corporate entity] in a forum other than the place of incorporation or principal place of business." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)). Plaintiff alleges that defendant Beauty Brokers is a New Jersey Corporation with its principal place of business in New Jersey, and that defendant Melinda Farina is a resident and citizen of New Jersey.[9]

The U.S. Supreme Court's decision in *Perkins v. Benguet Consol. Min. Co.*, 342 U.S. 437 (1952), illustrates the level of contacts necessary to establish general jurisdiction. There, the Court found a company to be

---

9   R. Doc. 1 at 2.

subject to general jurisdiction in Ohio because the corporation's president resided in Ohio, the records of the corporation were kept in Ohio, the director's meetings were held in Ohio, the accounts were held in Ohio banks, and all key business decisions were made there. *Perkins*, 342 U.S. at 447–48. Defendants are based in New Jersey, and plaintiffs do not allege sufficient facts to satisfy this standard.

Instead, plaintiffs argue that defendants maintained continuous and systemic contacts with Louisiana through their company website and are thus subject to general personal jurisdiction.[10] In support of their argument, plaintiffs cite *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), which used a sliding scale test to measure a website's connection to a forum state.[11] But the Fifth Circuit has held that the *Zippo* sliding scale approach "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).[12] Instead,

---

10   R. Doc. 13 at 9–11.
11   *Id.* at 9.
12   The Fifth Circuit acknowledged that it had applied the sliding scale approach to both specific and general jurisdiction in *Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999). *See Revell*, 317 F.3d at 471.

7

"*Zippo*'s scale work[s] with specific jurisdiction—the context in which it was originally conceived." *Id.* Therefore, the sliding scale approach does not fit the general jurisdiction analysis.

Further, defendants' website is insufficient to establish general personal jurisdiction. In *Mink v. AAAA Dev. LLC*, 190 F.3d 333 (5th Cir. 1999), the Fifth Circuit rejected both general and personal jurisdiction over a defendant when its website provided contact information and printable order forms, but did not provide a venue through which orders could be taken online. *Id.* at 337. Here, plaintiffs allege that defendants' website facilitated a streamlined booking process to book services directly with defendants, but this process required users to contact defendants via email as the first step.[13] Orders and appointments are not made on the website itself. Requiring visitors to use email to interact with the company, as opposed to being able to interact with the company directly on the website, establishes a passive website with a low amount of interactivity. This, "without more, is insufficient to establish personal jurisdiction." *Mink*, 190 F.3d at 337; *see Royal Coatings, Inc. v. StanChem, Inc.*, 2024 WL 1256250, at *6–7 (E.D. La. Mar. 25, 2024) (distinguishing a company's email activity

---

But the Fifth Circuit now concludes that the approach is better suited to the specific jurisdiction inquiry.
[13] R. Doc. 13 at 10.

from business conducted through webpages, with the former insufficient to demonstrate purposeful availment).

Defendants do not have continuous and systemic contacts in Louisiana. Accordingly, plaintiffs do not make a *prima facie* showing that defendants are subject to general personal jurisdiction in Louisiana.

### B. Specific Jurisdiction

Plaintiffs also argue that defendants are subject to specific jurisdiction because they have purposefully directed their social media activities at Louisiana, and the litigation results from alleged injuries that arise out of or relate to those activities. *See Revell*, 317 F.3d at 472 ("For specific jurisdiction we look only to the contact out of which the cause of action arises.").

The touchstone for the exercise of personal jurisdiction over nonresident defendants in defamation cases is *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, a reporter living in Florida published an allegedly defamatory article in the National Enquirer, a publication based in Florida but with national distribution, about a popular entertainer living in California. The allegedly libelous story concerned the California activities of a California resident. Importantly, the Supreme Court noted that the article drew from California sources and that the reporter and publishers of

9

the article knew that the brunt of the harm would be felt in California. The Supreme Court found that "an individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Id.* at 790. The Fifth Circuit has embraced the Calder "effects" test, finding that "[e]ven an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999). But "the 'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." *Revell*, 317 F.3d at 473.

The facts of this case are similar to those in *Calder*. Plaintiffs allege that defendants maintain an Instagram and Reddit account that made the defamatory posts.¹⁴ The allegedly defamatory posts contained references to New Orleans, Louisiana, and referred to plaintiffs' Louisiana-based activities. A Reddit post calls Coleman "wife of a NOLA Derm" and states that her "husbands patients hate [her]."¹⁵ Another Reddit post identified Coleman as "[t]he wife of New Orleans Dermatologist

---

¹⁴   R. Doc. 1 at 2.
¹⁵   *Id.* at 6.

10

'ColemanDermatology.'"[16] And another described her as "the wife of a dermatologist- COLEMAN DERMATOLOGY."[17] On Instagram, the posts describe Coleman as "NOLA derm wife," "New Orleans wife of dermatologist," and "wife of a derm in NOLA."[18] Other Instagram posts described her actions as conducted "from her LITTLE life in New Orleans,"[19] and noted that Coleman had established a pattern of behavior and acted against "several women in her town."[20] Similar to *Calder*, defendants allegedly used Louisiana-based sources in their posts. A Reddit post stated that plaintiffs' clients complained about her.[21] An Instagram post thanked "so many NOLA women sharing . . . eye opening truth about" Coleman,[22] and another cited "several other women in" New Orleans as the source of its contents.[23] An Instagram post noted that that the poster has "spoken to all of" the women that Coleman has acted against.[24] Though plaintiffs allege that some of the harm suffered was reputational damage from the health and wellness Instagram community, plaintiffs also allege

---

[16]     *Id.* at 7.
[17]     *Id.* at 8.
[18]     *Id.* at 11, 12, 16, 17
[19]     *Id.* at 14.
[20]     *Id.* at 16.
[21]     *Id.* at 7.
[22]     *Id.* at 13.
[23]     *Id.* at 14.
[24]     *Id.* at 16.

that these actions have harmed her standing in the New Orleans community, including harm to Coleman's personal reputation and Dermatology NOLA's professional reputation, leading to loss of income, loss of business, reputational damage, and severe emotional distress.[25] Those harms are felt where Coleman and Dermatology NOLA located—in Louisiana. As evidenced by the alleged Reddit and Instagram posts, the alleged defamation concerned the Louisiana-based activities of Louisiana residents, was drawn from Louisiana sources, and the brunt of the harm was suffered in Louisiana. Therefore, Louisiana was the focal point of the story and the harm suffered. *See Calder*, 465 U.S. at 788–89. The Court finds that plaintiffs make a *prima facie* showing that defendants are subject to specific personal jurisdiction in Louisiana.

**C. Reasonableness**

Once a plaintiff has established minimum contacts, the burden shifts to the defendant to make a "compelling case" that the exercise of jurisdiction is not reasonable. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). More specifically, the defendant must establish that the exercise of jurisdiction offends traditional notions of fair play and

---

[25] *Id.* at 22.

substantial justice. *Id.* Among the factors to be considered are the defendant's burden, the forum state's interests, and the plaintiffs' interest in convenient and effective relief. *Id.* Defendants argue that having to litigate a case in Louisiana is unfair and unreasonable because they are from New Jersey, because Louisiana is a more favorable jurisdiction for plaintiffs, and because the more efficient place to resolve the matter is New Jersey.[26]

Here, Louisiana plaintiffs clearly have a strong interest in the convenient administration of justice in a Louisiana forum. Although it may be somewhat inconvenient for defendants to litigate in Louisiana, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Id.* There is no evidence that Louisiana courts, or this Court, would be biased toward plaintiffs. Finally, Louisiana has a strong interest in tortious conduct directed at residents by nonresidents. *See id.* Weighing all of these factors, the Court concludes that exercising jurisdiction over defendants does not violate due process.

---

[26] R. Doc. 10-1 at 12.

13

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(2). Defendants' motion to stay discovery is dismissed as MOOT.

New Orleans, Louisiana, this   17th   day of June, 2025.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE